IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BILLY R. CURRY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:08-CV-0933-D |
| VS. | § | |
| | § | |
| TELECT, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Billy R. Curry ("Curry") sues defendant Telect, Inc. ("Telect") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, contending that it discharged him because of his race and retaliated against him for opposing unlawful employment practices. Telect moves for summary judgment. The court concludes that Curry has failed to present evidence that he engaged in an activity protected under Title VII, and therefore dismisses his retaliation claim. The court holds that Curry has presented a genuine issue of material fact concerning whether Telect's proffered reason for discharging him was a pretext for discrimination. The court therefore denies Telect's motion as to Curry's discriminatory discharge claim.

I

Curry, who is African-American, was formerly employed by Telect as a painter.[1] Telect manufactures telephone equipment, and

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to Curry as the summary

Curry's job included spray painting telephone components in an automated paint booth. Curry began working for Telect on a temporary basis in January 2006, and he was hired as a permanent painter on June 4, 2006 by Telect's Human Resources Manager, Kevin P. Dworaczyk ("Dworaczyk"), who is Caucasian.[2] Fewer than 14 months later, on July 18, 2007, Dworaczyk discharged Curry, citing his failure to wear the requisite personal protective equipment ("PPE") while working in a paint booth.

Curry complains of several disciplinary actions taken prior to his discharge. In February 2007 Curry's supervisors issued him a verbal warning for clocking in before the start of his shift. He was also issued a final warning in April 2007 for not showing up

_____

judgment nonmovant and draws all reasonable inferences in his favor. *E.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Curry states in his March 17, 2009 declaration that Dworaczyk did not hire him. He instead asserts that Jesse Cardinas ("Cardinas"), the supervisor of the Paint Department, told him he was going to be hired, and that Cardinas had recommended him for hiring. This averment not only contradicts Dworaczyk's declaration, but it also directly contradicts Curry's earlier deposition testimony, in which he stated that he was hired by Dworaczyk. It is well established "that a plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). In any event, this issue is not dispositive of Curry's discriminatory discharge claim because the court ultimately holds that, even if Dworaczyk hired and fired Curry, he has created a genuine issue of material fact as to pretext. The court therefore proceeds under the assumption that the same actor (Dworaczyk) both hired and fired Curry.

for work and for failing to notify his supervisors that he would miss work.  Curry maintains that he did call his supervisors, and that they told him he did not call the proper number.  Curry was also given a poor performance review ("not meeting expectations") in April 2007, although he asserts that he never received the review or discussed it with anyone.  He was subsequently placed on a performance improvement plan ("PIP") in June 2007.

Curry's retaliation claim stems from an incident occurring in May 2007.  Curry maintains that he had been wearing the same PPE for several days because no new PPE was available, and that the PPE he was wearing had developed holes.  Curry was concerned for his safety because he had been told during orientation never to paint without wearing proper PPE.  When he approached Steve Oliver ("Oliver"), Telect's Production Manager, about obtaining new PPE, Oliver allegedly told him to keep his mouth shut and keep working. While Curry was talking to Oliver, Dworaczyk walked by and had a private conversation with Oliver.  Dworaczyk then asked Curry if Curry could put tape on his suit until new PPE arrived.  Curry and the other employees received new PPE within two days.  Curry alleges that Telect, and Oliver in particular, began to retaliate against him after he complained about his PPE.  Oliver also allegedly stated at some point that he (Oliver) "was a slave

driver."[3]  P. App. 6.

Telect discharged Curry on July 18, 2007.  The previous day a Technology Risk Control Specialist from Travelers Insurance observed two individuals working in a paint booth without PPE.  One of the individuals also allegedly had an air hose in his mouth. Although it is unclear from the evidence how the two individuals were identified, Telect apparently determined that they were Curry and Thomas Ray ("Ray"), a Caucasian coworker.  Dworaczyk and Oliver met with Curry on the morning of July 18 and informed him that he was being terminated for failing to wear PPE, in violation of Telect's safety rules.  Curry denied then, and continues to deny, that he was working in a paint booth without PPE.

Dworaczyk also summoned Ray to his office on July 18, and he informed him that he and Curry had been seen working in a paint booth without PPE.  Ray asserts that when he denied this to Dworaczyk, Dworaczyk threatened him with more severe discipline if he did not agree that they had been working without PPE.  Ray asserts that, because he did not want to lose his job, he accepted a three-day suspension, even though the allegations were false. Telect maintains that Ray was suspended rather than discharged because he was not, as was Curry, on a PIP.  Ray is no longer employed by Telect.

---

[3]Curry does not contend that this alleged statement is direct evidence of discrimination or cite to it in any of his arguments. Nor does he explain the time or context of this alleged remark.

- 4 -

Curry filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Telect unlawfully discriminated against him based on race and retaliated against him.  In the EEOC charge, Curry cites his discharge and the two write-ups discussed above.[4]  After receiving a right to sue letter, Curry filed this lawsuit alleging race discrimination and retaliation under Title VII.[5]  Telect now moves for summary judgment dismissing Curry's claims.  Curry opposes the motion.

II

As a preliminary matter, the court notes that the organization of Curry's response brief has made it difficult to discern his allegations and arguments.  Curry has employed a briefing method

_____

[4]Curry also asserts in his EEOC charge that, on June 18, 2007, he was denied a salary increase and placed on probation for 90 days.  The probationary period presumably refers to the PIP that Telect placed Curry on in June 2007.  But Curry neither mentions nor cites evidence in his complaint or in his summary judgment briefing indicating that he was denied a salary increase.  The court likewise has not located summary judgment evidence of a denied raise.  Accordingly, the court holds that there is no evidence to support an allegation concerning a denied raise.

[5]Curry's complaint mentions in passing that he was discriminated against because of his race *and age*.  Curry does not mention age discrimination anywhere in his briefing; thus it appears that Curry is not pursuing an age discrimination claim.  In any case, Curry may not pursue an age discrimination claim because he did not exhaust his administrative remedies by filing an EEOC charge alleging age discrimination.  *See, e.g.*, *Anderson v. City of Dallas*, 116 Fed. Appx. 19, 25 (5th Cir. 2004) (per curiam).
   The complaint also alludes to harassment, but Curry's summary judgment briefing does not mention or attempt to support a claim for harassment or hostile work environment.  Accordingly, the court, like the parties, does not interpret the complaint to assert a harassment claim.

that this court has repeatedly criticized.  *See, e.g.*, *Ellis v. Crawford*, 2007 WL 1624773, at *3 (N.D. Tex. June 6, 2007) (Fitzwater, J.); *Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *3-*4 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 2009 WL 928177 (5th Cir. Apr. 7, 2009) (per curiam).  Curry presents a "Statement of Facts" that is essentially a restatement of his and Ray's declarations.  This is followed by an "Argument" section that is largely disconnected from the factual allegations and totally devoid of citations to the summary judgment record.  Consequently, it has been necessary for the court to undertake the task of attempting to link Curry's legal arguments to the factual assertions and any supporting evidence.  The court should not have to guess which facts Curry finds substantively significant. Assertions about the evidence and law should be set out in the argument section, and it should state clearly and with particularity why summary judgment is not warranted on the basis asserted.  *See Wooten*, 2007 WL 63609, at *4.  Moreover, under N.D. Tex. Civ. R. 56.5(c), "[a] party whose . . . response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence."  But despite the briefing deficiencies, because the summary judgment record is relatively thin in this case, the court has attempted to link Curry's arguments with his factual assertions and supporting

evidence.  The court now turns to the issues presented.

                                  III

     Because Telect will not have the burden of proof on Curry's

claims at trial, it can meet its summary judgment obligation by

pointing the court to the absence of evidence to support the

claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once Telect does so, Curry must go beyond his pleadings and

designate specific facts showing there is a genuine issue for

trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine

if the evidence is such that a reasonable jury could return a

verdict in Curry's favor.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  Curry's failure to produce proof as to any

essential element renders all other facts immaterial.  *See Trugreen

Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007)

(Fitzwater, J.).  Summary judgment is mandatory if Curry fails to

meet this burden.  *Little*, 37 F.3d at 1076.

                                  IV

     Telect moves for summary judgment dismissing Curry's

discriminatory discharge claim.[6]

_____

     [6]Although Curry mentions the write-ups and the imposition of
a PIP in his EEOC charge and his declaration, he does not appear to
base his race discrimination claim on these actions.  His
arguments opposing summary judgment pertain solely to his discharge.  The
court accordingly treats his race discrimination claim as one for
discriminatory discharge.  To the extent Curry attempts to base a
race discrimination claim on these other disciplinary actions,

                                - 7 -

A

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  In the context of his discriminatory discharge claim, Curry must present sufficient direct or circumstantial evidence to enable a reasonable jury to find that his race was a motivating factor in his discharge.  *See, e.g., Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (addressing Title VII claims for race, color, religion, sex, or national origin discrimination).  "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (Fitzwater, J.) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).  A plaintiff who offers "sufficient direct evidence of intentional discrimination should prevail, just as in any other civil case where a plaintiff meets

---

however, the court holds that they are not adverse employment actions actionable under Title VII.  *See McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (holding that, in context of discrimination claim, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" (alteration in original) (citation omitted)); *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *5 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (holding that "disciplinary warnings and negative performance evaluations do not constitute adverse employment actions because they have only a tangential effect, if any, on ultimate employment decisions").

his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 n.6 (5th Cir. 1994)).  Because Curry has not adduced direct proof of race discrimination, he must rely on circumstantial evidence.

When direct evidence is unavailable, a plaintiff can prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case).  As modified, *McDonnell Douglas* consists of three stages.  First, Curry must establish a prima facie case of discrimination, which "creates a presumption that [Telect] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The burden then shifts to Telect to articulate a legitimate, nondiscriminatory reason for Curry's discharge. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  Telect's burden is one of production, not proof, and involves no credibility assessments. *See, e.g.*, *West*, 330 F.3d at 385.  Finally, if Telect meets its production burden, then Curry may proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312.  Under the pretext alternative, Curry must "offer sufficient evidence to create a genuine issue of material fact . . . that [Telect's] reason is not true, but is instead a pretext for discrimination." *Id.* (internal quotation marks omitted).

Under the mixed-motives alternative, Curry must offer sufficient evidence to create a genuine issue of material fact "that [Telect's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [his] protected characteristic[.]" *Id.* (internal quotation marks omitted).

B

To establish a prima facie case of race discrimination under Title VII, Curry must show that he (1) is a member of a protected class, (2) was qualified for the position, (3) was discharged, and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show that other similarly situated employees were treated more favorably. *See Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (addressing discharge-based § 1981 claims); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). Telect concedes for the purposes of its summary judgment motion that Curry can establish a prima facie case of discriminatory discharge.

The burden thus shifts to Telect to articulate a legitimate, nondiscriminatory reason for discharging Curry. *St. Mary's Honor Ctr.*, 509 U.S. at 506-07. Telect has satisfied its burden. Telect has consistently asserted that it discharged Curry because he failed to wear PPE while working in a paint booth, which is a violation of its safety rules. Violation of a company safety rule constitutes a legitimate, nondiscriminatory reason for discharge.

- 10 -

*See, e.g.*, *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *6 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) ("An employee's violation of a company work rule is a legitimate, nondiscriminatory reason for discharging him.").

C

Because Telect has satisfied its burden, Curry is obligated to adduce evidence that would permit a reasonable jury to find that Telect's reason for discharging him is a pretext for discrimination, or to find that his race was a factor that motivated the decision to terminate him. *See Rachid*, 376 F.3d at 312. Curry proceeds under the pretext alternative. He contends that Telect's articulated reason for his discharge——that he was working without proper PPE——is false.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also St. Mary's Honor Ctr.*, 509 U.S. at 511 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."). There may be instances, however, in which this showing is not sufficient to establish pretext, such as when a plaintiff has only

created a weak fact issue as to the falsity of the employer's reason and there is abundant evidence that no discrimination occurred. *See Reeves*, 530 U.S. at 148.

Telect argues that Curry's burden is even higher in this case because the same actor (Dworaczyk) both hired and fired Curry.[7] The Fifth Circuit has recognized that when "the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employee is created." *Faruki v. Parsons, S.I.P., Inc.*, 123 F.3d 315, 320 n.3 (5th Cir. 1997) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)). The inference is not unassailable, however, and a plaintiff may overcome it by presenting evidence of "sufficiently egregious" facts. *Brown*, 82 F.3d at 658; *see also Haynes v. Gernsbacher's, Inc.*, 2002 WL 1783905, at *4 (N.D. Tex. July 31, 2002) (McBryde, J.).

Accordingly, the question here is whether Curry has proffered evidence of facts egregious enough to overcome the same actor inference and allow a reasonable jury to find that Telect's articulated reason for discharging him was false and pretextual. The court concludes that Curry has presented such evidence.

Curry's consistent averments that he was not working in a paint booth without PPE would alone be insufficient to overcome the

_____

[7]As indicated *supra* at note 2, the court assumes *arguendo* that Dworaczyk is responsible for both hiring and firing Curry.

inference.   But Curry's denials are corroborated by Ray, his coworker.  Ray avers that neither he nor Curry was working without PPE.  Additionally, Ray asserts that, when he told Dworaczyk that the allegations were untrue, Dworaczyk threatened Ray with more severe disciplinary action if he did not agree that he and Curry had been working without PPE.  Ray asserts that, in the face of Dworaczyk's threat, he agreed to a three-day suspension even though the allegations were false.   When the court accepts Ray's assertions as true——as it must at the summary judgment stage——this evidence is sufficiently egregious to overcome the same actor inference.   If a jury believes that Dworaczyk is lying about Curry's conduct, and finds that he threatened to severely discipline Ray——a witness who could reveal his lie——if he did not also effectively lie by admitting that he and Curry had been working without PPE, the jury could also reasonably find that Telect's reason for discharging Curry is pretextual.  Disbelief of an employer's articulated reason for a discharge is particularly strong evidence of pretext when there is evidence that the employer has been mendacious.  *See St. Mary's Honor Ctr.*, 509 U.S. at 511. If true (which the jury must decide), threatening a coworker to keep him from revealing the employer's lie qualifies as both mendacious and egregious.  The fact that Ray, a Caucasian, was only

suspended for three days also supports an inference of pretext.[8] Moreover, although there is evidence that two employees were seen working without PPE by a Travelers Insurance Risk Control Specialist (who did not identify them), Telect does not explain how these two employees were determined to be Curry and Ray. Telect does not provide evidence indicating that there was any type of investigation or that anyone observed Curry and Ray working without PPE. The sum of the evidence Curry has presented——especially Ray's assertions concerning Dworaczyk's threat——is sufficient for a reasonable jury to find that Telect's articulated reason for discharging Curry is untrue and pretextual. Accordingly, the court denies Telect's motion for summary judgment as to Curry's discriminatory discharge claim.

V

Telect also seeks summary judgment dismissing Curry's retaliation claim. Title VII's anti-retaliation provision prohibits employers from "discriminat[ing] against" an employee "because he has opposed any practice made an unlawful employment practice" by Title VII or "because he has made a charge, testified, assisted, or participated in any manner in an investigation,

---

[8]As noted above, Telect contends that Curry was discharged rather than suspended (like Ray) because Curry was on a PIP at the time. If the jury finds this to be true, then Ray may not be a similarly-situated employee. But considering Ray's declaration and the evidence Curry has presented, the court need not now accept Telect's assertion as true.

- 14 -

proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a).
Because Curry does not offer direct evidence of retaliation, the
court analyzes his claim under the modified *McDonnell Douglas*
burden-shifting paradigm.  Under this approach, Curry must first
establish a prima facie case of retaliation.  "To do so, he must
demonstrate that (1) he engaged in a protected activity, (2) an
adverse employment action occurred, and (3) a causal link existed
between the protected activity and the adverse employment action."
*Walker*, 2005 WL 2278080, at *9 (citing *Long v. Eastfield Coll.*, 88
F.3d 300, 304 (5th Cir. 1996)).

Telect contends that Curry cannot establish a prima facie case
of retaliation because he did not engage in a protected activity.
Curry alleges that Telect retaliated against him for complaining
about the lack of new PPE and being required to wear the same PPE
for several days.[9]  He contends that this opposition to the lack of
new PPE was a protected activity.  Curry's complaint, however, does
not constitute a protected activity.

―――――――――――――

[9]Although Curry appears to base his retaliation claim solely
on the PPE complaint, he also states in his declaration that he
complained to his coworkers that Dworaczyk and Oliver mistreated
employees and acted like slave drivers.  It is highly doubtful that
such an amorphous complaint (unmoored to any protected
characteristic) could constitute opposition to an unlawful
employment practice.  But assuming it could, Curry has offered no
evidence that would permit a reasonable jury to find a causal link
between these complaints made to his coworkers and an adverse
employment action.  Moreover, Curry asserted several times during
his deposition that the only activity that Telect retaliated
against him for was complaining about the PPE.

Title VII does not protect opposition to all unlawful employment practices, only those made unlawful by Title VII, i.e., employment practices that are discriminatory. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) (holding that complaining about conduct that is not discriminatory in nature is not protected activity under Title VII). Curry offers no evidence that the failure to provide new PPE to Curry and his coworkers was discriminatory in any way or that he complained that it was discriminatory. Failure to provide new PPE is not a discriminatory employment practice made unlawful by Title VII. *See Richard v. Cingular Wireless LLC*, 233 Fed. Appx. 334, 338 (5th Cir. 2007) (per curiam) ("To satisfy the protected activity requirement, an employee must oppose conduct made unlawful by Title VII; complaining of unfair or undesirable treatment not addressed by Title VII will not suffice."). Because a reasonable jury could not find that Curry engaged in a protected activity, he cannot establish a prima facie case of retaliation as a matter of law, and Telect is entitled to summary judgment dismissing his retaliation claim.

                                   VI

In its reply brief, Telect objects to portions of Curry's declaration filed in support of his response brief. It also objects to parts of the response brief's "Statement of Facts," which is essentially a restatement of Curry's declaration.

                              - 16 -

Specifically, Telect objects to portions of the declaration and Statement of Facts as (1) self-serving assertions contradicting previous deposition testimony and (2) unsubstantiated and conclusory statements of fact. Because the court has either granted summary judgment in favor of Telect notwithstanding the evidence to which objection has been made, or because it has denied summary judgment and has not relied on the objected-to evidence in doing so,[10] the court overrules Telect's objections as moot.

*     *     *

For the foregoing reasons, the court grants in part and denies in part Telect's February 2, 2009 motion for summary judgment. The court denies summary judgment as to Curry's discriminatory discharge claim, and it grants summary judgment dismissing Curry's retaliation claim. The objections contained in Telect's April 7, 2009 reply brief are overruled as moot.

**SO ORDERED.**

June 15, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[10]For example, the court assumed *arguendo* that Dworaczyk hired and fired Curry, despite Curry's declaration that Dworaczyk did not hire him. *See supra* note 2.